IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| MARLENE SLATER, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA et al., | : | No. 15-502 |
| Defendants. | : | |

PRATTER, J.                                                                                                                     MAY 27, 2015

## MEMORANDUM

### I.     INTRODUCTION

To the question posed in Genesis 4:9 "Am I my brother's keeper?" the plaintiff in this case would argue in the affirmative—at least if the relationship arises between co-defendants and one of them is the City of Brotherly Love.

Marlene Slater claims that the City of Philadelphia (the "City"), the City of Philadelphia Law Department (the "Law Department"), and various members of the Law Department are liable under 42 U.S.C. § 1983 for violating her rights under the Fifth and Fourteenth Amendments to the United States Constitution. Ms. Slater alleges that in connection with a lawsuit brought against her and the City by a third party, the Defendants caused the City to negotiate and enter into a settlement agreement with the third party that resolved the third party's claims against the City, but did not resolve the third party's claims against Ms. Slater or the City's cross-claim against Ms. Slater. This, Ms. Slater contends, violated her substantive due process rights (Count I), constituted a state-created danger for which the City may be directly liable (Count II), and constituted an act by the City's agent for which the City is vicariously liable (Count III). The Defendants filed a Motion to Dismiss (Docket No. 5). For the reasons that follow, the Court will grant the Motion.

1

## II. ALLEGATIONS IN THE COMPLAINT

Ms. Slater operated a hair salon in West Philadelphia. In 2012, Anita King sued Ms. Slater and the City in connection with a slip-and-fall accident on Ms. Slater's property. The City was secondarily liable in the case, and asserted a cross-claim against Ms. Slater. The matter was scheduled for arbitration on February 4, 2013. Before the arbitration hearing, Assistant City Solicitor Duncan M. Lloyd informed Ms. Slater's counsel that the City had settled with Ms. King for $20,000. Ms. Slater was not a party to the settlement and had not been included in the discussions leading up to the settlement. The arbitration hearing on the City's cross-claim against Ms. Slater resulted in a $20,000 award against Ms. Slater in favor of the City. Ms. Slater appealed the award.

On appeal, Ms. Slater unsuccessfully attempted to remove Ms. King from the action.[1] Ms. Slater claims that she suffered hardship—including potential exposure to liability—as a result of the City's failure to include her in its settlement with Ms. King. On September 12, 2013, judgment was entered in favor of the City and against Ms. Slater and her beauty salon in the amount of $7,500. Ms. Slater has not appealed that judgment.

## III. LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. Although Federal Rule of Civil Procedure 8 requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to "give the defendant fair notice of what the . . . claim is and the grounds upon

---

[1] On April 24, 2013, Ms. King filed a Stipulation to Limitation of Monetary Recovery Pursuant to Pennsylvania Rule of Civil Procedure 1311.1, in which she stipulated that $25,000 was the maximum amount of damages recoverable upon appeal from the arbitration award. Although Ms. Slater mentions the Stipulation repeatedly in her briefing and in the Complaint, she does not explain whether the Stipulation had any effect on her appeal or why the Stipulation is relevant to her constitutional claims in this case.

which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and internal quotation marks omitted) (alteration in original), the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citation omitted).

To survive a motion to dismiss, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555 (citations omitted). The question is not whether the claimant will ultimately prevail, but whether the complaint is "sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 131 S. Ct. 1289, 1296 (2011). An assessment of the sufficiency of a complaint is thus "a context-dependent exercise" because "[s]ome claims require more factual explication than others to state a plausible claim for relief." *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 617 F.3d 85, 98 (3d Cir. 2010) (citations omitted).

When deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court may look only to the facts alleged in the complaint and its attachments. *See Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1251, 1261 (3d Cir. 1994). The Court must accept as true all well-pleaded allegations in the complaint and view them in the light most favorable to the plaintiff. *Angelastro v. Prudential-Bache Sec., Inc.*, 764 F.2d 939, 944 (3d Cir. 1985). The Court must accept as true all reasonable inferences that may be drawn from the allegations, and view those facts and inferences in the light most favorable to the non-moving party. *See Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989). Nonetheless, the Court need not accept as true "unsupported conclusions and unwarranted inferences," *Doug Grant, Inc. v. Greate Bay Casino*

3

*Corp.*, 232 F.3d 173, 183-84 (3d Cir. 2000) (citations and internal quotation marks omitted), or the plaintiff's "bald assertions" or "legal conclusions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (citations and internal quotation marks omitted).

## IV. DISCUSSION

"To determine the sufficiency of a complaint under the pleading regime established by [*Iqbal* and *Twombly*], a court must take three steps: First, the court must tak[e] note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010).[2]

"To establish a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a violation of a right protected by the Constitution or laws of the United States that was committed by a person acting under the color of state law." *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000) (en banc) (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996)). "The first step in evaluating a section 1983 claim is to 'identify the exact contours of the underlying right said to have been violated' and to determine 'whether the plaintiff has alleged a deprivation of a constitutional right at all.'" *Id.* (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998)). Only then can the Court determine whether the plaintiff has alleged sufficient facts that, if true, would mean that the defendants are liable for violating her constitutional rights.

Ms. Slater also faces legal hurdles because she named as defendants in this action parties for whom special liability standards apply, namely municipal defendants (i.e., the City and its

---

[2] The parties' briefing addresses whether the doctrines of res judicata and/or collateral estoppel bar this action, but it is unnecessary for the Court to address those issues because the Complaint fails to state a claim for other reasons.

4

Law Department, an agency of the City[3]) and municipal officials. Municipal defendants may be sued under § 1983 for constitutional rights violations. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690-92 (1978). However, in order to state a claim against a municipality under § 1983, Ms. Slater must allege that (1) the municipality had a policy or custom that deprived her of a constitutional right; (2) the municipality acted deliberately and was the moving force behind the deprivation; and (3) her injury was caused by the identified policy or custom. *See Stewart v. Moll*, 717 F. Supp. 2d 454, 464-65 (E.D. Pa. 2010). The municipality cannot be liable under § 1983 solely on a respondeat superior theory. *See Monell*, 436 U.S. at 692. Rather, Ms. Slater must show that the municipality, through one of its policymakers, affirmatively adopted the policy or acquiesced in the widespread custom that caused the violation. *See Watson v. Abington Twp.*, 478 F.3d 144, 155-56 (3d Cir. 2007). The municipality may be liable "for a single decision by municipal policymakers under appropriate circumstances," such as when an official's "acts or edicts may fairly be said to represent official policy." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986).

The existence of an unlawful policy or custom is not enough, in and of itself, to maintain a § 1983 action against a municipality. Ms. Slater must also allege that the municipality's practice proximately caused the injuries she suffered. *See Losch v. Borough of Parkesburg*, 736 F.2d 903, 910 (3d Cir. 1984). Proof of proximate causation requires that there be "an affirmative

---

[3] Ms. Slater names the Law Department as a defendant, but such a municipal department "is merely an administrative arm of the local municipality, and is not a separate judicial entity." *Padilla v. Twp. of Cherry Hill*, 110 F. App'x 272, 278 (3d Cir. 2004); *see* Phila. Home Rule Charter § 3-100(d) (creating the Law Department). Consequently, "[i]n Section 1983 actions, [law] departments cannot [generally] be sued in conjunction with municipalities." *Id.* (quoting *DeBellis v. Kulp*, 166 F. Supp. 2d 255, 264 (E.D. Pa. 2001)); *cf. Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 25 n.4 (treating a municipality and its police department "as a single entity for purposes of section 1983 liability"). Because Ms. Slater also names the City of Philadelphia as a defendant, the Court will dismiss any and all claims against the "Law Department." Moreover, even if the Law Department were a separate judicial entity, Ms. Slater's claims against it would fail for the same reasons that her claims against the City fail.

link between the policy and the particular constitutional violation alleged." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985).

With respect to the liability of municipal officials, two theories of supervisory liability may apply. First, like municipalities, "[i]ndividuals who are policymakers may be liable under § 1983 if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'" *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)). Second, "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *Id.*

### A. MS. SLATER'S SUBSTANTIVE DUE PROCESS CLAIM[4]

The Due Process Clause provides that a state shall not "deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1. Ms. Slater invokes the substantive component of due process, which "protects individual liberty against 'certain government actions regardless of the fairness of the procedures used to implement them.'" *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992) (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)). Specifically, Ms. Slater alleges that the City, the Law Department, and members of the Law Department violated her liberty and property interests by failing to include her in a settlement or in settlement negotiations in connection with Ms. King's case against Ms. Slater and the City.

---

[4] Ms. Slater's Complaint and Response in Opposition both say that Ms. Slater also brings an equal protection claim, but apart from that assertion, there are neither allegations nor arguments supporting or even purporting to describe an equal protection claim. Therefore, to the extent Ms. Slater claims to make a claim under the Equal Protection Clause, the Court will grant Defendants' Motion to Dismiss.

6

Only certain property and liberty interests enjoy protection under the substantive component of the Due Process Clause. "In the context of liberty interests, [the Supreme Court] has been careful to examine each asserted interest to determine whether it 'merits' the protection of substantive due process. Each new claim to [substantive due process] protection must be considered against a background of Constitutional purposes, as they have been rationally perceived and historically developed." *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 229 (1985) (Powell, J., concurring) (internal citations omitted). The Supreme Court has recognized that the "liberty" specially protected by the Due Process Clause includes "the rights to marry; to have children; to direct the education and upbringing of one's children; to marital privacy; to use contraception; to bodily integrity; and to abortion." *Washington v. Glucksberg*, 521 U.S. 702, 719-20 (1997). At the same time, courts have "always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." *Collins v*, 503 U.S. at 125.

In the context of property interests, "when a plaintiff challenges a non-legislative state action [under the substantive component of the Due Process Clause], we must look, as a threshold matter, to whether the property interest being deprived is 'fundamental' under the Constitution. If it is, then substantive due process protects the plaintiff from arbitrary or irrational deprivation, regardless of the adequacy of procedures used. If the interest is not 'fundamental,' however, the governmental action is entirely outside the ambit of substantive process and will be upheld so long as the state satisfies the requirements of procedural due process." *Nicholas v. Pa. State Univ.*, 227 F.3d 133, 142 (3d Cir. 2000). Fundamental property interests include such things as land ownership, *see DeBlasio v. Zoning Bd. of Adjustment*, 53 F.3d 592, 600 (3d Cir. 1995), but do not include property interests such as a service contract with the state, *see Reich v.*

7

*Beharry*, 883 F.2d 239, 245 (3d Cir. 1989). The Third Circuit Court of Appeals has been "reluctant to extend substantive due process protection to other, less fundamental property interests," *Nicholas*, 227 F.3d at 141, especially in light of the Supreme Court admonition that courts should exercise "utmost care whenever [they] are asked to break new ground in this field." *Collins*, 503 U.S. at 124.

With this framework in mind, the Court finds that there is no fundamental right or liberty interest to participate in settlement negotiations with a state actor or to be included in a settlement between a state actor and another party in a particular lawsuit. The Court is unaware of any authority that has ever recognized any such right in the absence of an identifiable contract right, and Ms. Slater does not allege the existence of any contract with the City. Ms. Slater argues that Defendants "violated her liberty interests with the threat of her real property being taken," but it is plain that not every such threat constitutes a constitutional violation. Indeed, municipalities file civil lawsuits and assert civil claims against private individuals all the time and their success in prosecuting such claims do not violate any substantive due process protections. Because Ms. Slater has not alleged the violation of a recognized property or liberty interest that is protected by the substantive component of the Due Process Clause, she fails to state a claim upon which relief can be granted.

Moreover, even if Ms. Slater alleges the actionable violation of a right that enjoys substantive due process protection (which she does not), Ms. Slater fails to allege any kind of policy or custom that may be actionable. Ms. Slater's allegations with respect to a policy or custom are conclusory and, to the extent they are not conclusory, they relate only to the Defendants' single decision in this case to settle a lawsuit with one party but not another. (*See* Compl. ¶¶ 26-28, 31-33). A single decision will not expose a municipality to liability unless it

8

can fairly be said to represent official policy. *See Pembaur*, 475 U.S. at 480. Here, the Defendants' handling of Ms. Slater's case is not representative of any policy or custom for which the Defendants may be held liable.

Ms. Slater also alleges that certain individuals—City Solicitor Shelley R. Smith, First Deputy City Solicitor Donna J. Mouzayck, Chief Deputy City Solicitor Norman G. Prajzner, Divisional Deputy City Solicitor Kenneth S. Butensky, and Assistant City Solicitor Duncan M. Lloyd—are liable under § 1983 for violating her substantive due process rights, but the Court will dismiss her claims against them because, again assuming that she alleges the violation of a recognized liberty or property subject to substantive due process protections (which she does not), she does not allege sufficient facts under either of the theories of supervisory liability explained above. First, Ms. Slater's Complaint fails to articulate a coherent policy or custom that could be actionable under § 1983. *See supra*. Second, Ms. Slater's Complaint contains no non-conclusory allegations that anyone other than Mr. Lloyd was personally involved in the City's handling of her case, so the bald allegations that the individual Defendants (other than Mr. Lloyd) were somehow involved in her case are not entitled to the assumption of truth at the motion-to-dismiss stage. Third, to the extent Ms. Slater's Complaint contains non-conclusory allegations against Mr. Lloyd, her claim fails because it does not properly allege the violation of a recognized property or liberty interest.

Therefore, the Court finds that Ms. Slater does not allege the violation of her substantive due process rights and Count I fails to state a claim upon which relief can be granted.

### B. MS. SLATER'S DUTY-TO-PROTECT CLAIMS

"Generally, the Due Process Clause does not impose an affirmative duty upon the state to protect citizens from the acts of private individuals." *Sanford v. Stiles*, 456 F.3d 298, 303-04 (3d

9

Cir. 2006). However, the Third Circuit Court of Appeals has recognized two narrow exceptions to that general rule: "first, the state has a duty to protect or care for individuals when a 'special relationship' exists," and "[s]econd, the state has a duty when a 'state-created danger' is involved." *Id.* at 304 (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 907 (3d Cir. 1997)). Ms. Slater argues that both exceptions apply in this case and, consequently, she should be allowed to pursue her claims. She is in error.

First, Ms. Slater argues that the special relationship exception applies because she and the City were codefendants in the underlying state court action. The Court finds that such a relationship is not "special." The kind of "special relationship" that creates an affirmative duty on the part of the state and might trigger liability under § 1983 arises in custodial settings, such as incarceration or involuntary commitment. *See DeShaney*, 489 U.S. at 197-98. As the Supreme Court has explained, "it is the State's affirmative act of restraining the individual's freedom to act on his own behalf—through incarceration, institutionalization, or other similar restraint of personal liberty—which is the 'deprivation of liberty' triggering the protections of the Due Process Clause, not its failure to act to protect his liberty interests against harms inflicted by other means." *Id.* No stated authority has recognized that a "special relationship" arises between a municipality and a private citizen by virtue of their being codefendants in a single civil action under circumstances such as those presented here. Indeed, Ms. Slater was an *adversarial* party in the underlying state-court action against whom the City raised a cross-claim. Ms. Slater cites no cases to suggest that a state actor stands in a special relationship with respect to a co-party, much less an adversarial party in a civil case or has any obligation to consider an adversarial party's financial interests when negotiating a settlement with a third party.[5]

---

[5] At oral argument, counsel for Ms. Slater argued that secondary liability gives rise to a special relationship under *Sherman v. City of Phila.*, 745 A.2d 95 (Pa. Commw. Ct. 2000). But

10

Ms. Slater also argues that the state-created danger exception applies because the City settled with Ms. King even though it was "foreseeable" that such a settlement would result in harm to Ms. Slater. But to prevail on the state-created danger theory, Ms. Slater must allege and show (among other things) that the Defendants "acted with a degree of culpability that shocks the conscience." *See Morrow v. Balaski*, 719 F.3d 160, 177 (3d Cir. 2013) (quoting *Bright v. Westmoreland Cnty.*, 443 F.3d 276, 281 (3d Cir. 2006)). Here, the City's decision to settle with Ms. King but not Ms. Slater is a routine litigation decision that parties—including state actors—make all the time. The state-created danger exception certainly does not exist to tie the hands of state actors involved in litigation. Among other requisite factors, Ms. Slater has failed to allege facts from which a reasonable jury could find that Defendants acted with a degree of culpability that shocks the conscience, so her claim under the state-created danger exception cannot go forward.

### C. MS. SLATER'S VICARIOUS LIABILITY CLAIM

Count III of Ms. Slater's Complaint purports to state a claim against all Defendants on a theory of vicarious liability. But, as explained above, neither municipalities nor municipal officials may be held vicariously liable under § 1983. *See Monell*, 436 U.S. at 692-93; *A.M. ex rel. J.M.K.*, 372 F.3d at 586. As a result, the Court will dismiss Count III of the Complaint.

---

*Sherman* is inapposite because it states only that secondary liability is based on "*some* legal relation[ship] between the parties," *id.* at 99 (emphasis added), not based on the existence of a "*special* relationship" between the parties under the Due Process Clause. Suffice it to say Ms. Slater is left with only the circular argument that the "special relationship" here arises from the parties being co-defendants, not from some independent and identifiable custodial relationship. As there is no allegation that the City "affirmatively deprive[d] [Ms. Slater] of the freedom to act 'on [her] own behalf," *Hottenstein v. City of Sea Isle City*, 977 F. Supp. 2d 353, 363 (D.N.J. 2013) (quoting *Morrow v. Balaski*, 719 F.3d 160, 168 (3d Cir. 2013)), no special relationship exists between Ms. Slater and the City.

## V. CONCLUSION

Ms. Slater's Complaint fails to state a claim upon which relief can be granted, so the Court will grant Defendants' Motion to Dismiss. Additionally, the Court finds that any amendment to the Complaint would be futile because Ms. Slater's legal theories, not her factual allegations, are fundamentally flawed. There is nothing to suggest that Ms. Slater, if given another opportunity, would be able to allege the violation of a recognized constitutional right. Consequently, the Court will deny Ms. Slater leave to amend the Complaint.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE